**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**DERRICK CLARKE**

        Plaintiff,

v.                                 Civil Action No. __3:20-cv-00843-REP__

**STERLING MANAGEMENT CORPORATION OF VIRGINIA**

**STERLING HOLDINGS, LLC**

**and JOSHUA BILDER,**

        Defendants.

## COMPLAINT

Now comes the Plaintiff, Derrick Clarke ("Plaintiff" or "Mr. Clarke"), by counsel, and sets forth to the Court the following:

### I.      Preliminary Statement

1.    This is an action for actual, statutory, and punitive damages, costs, and attorney's fees pursuant to 15 U.S.C. § 1681 *et seq.* (Federal Fair Credit Reporting Act – "FCRA").

### II.      Jurisdiction and Venue

2.    This Court has jurisdiction as to this case under the provisions of 15 U.S.C. § 1681(p) and 28 U.S.C. § 1331.

3.    Venue is proper in this Court because Mr. Clarke resides in this District and Division, and a significant part of Mr. Clarke's claims occurred in this District and Division.

### III.    Parties

3.    Mr. Clarke is a natural person who resides in Chesterfield, Virginia. At all times relevant to the Complaint, Mr. Clarke was a "consumer" as defined by 15 § U.S.C. 1681a(c).

4.     Sterling Management Corporation of Virginia ("Sterling Management") is a for-profit Virginia stock corporation which hires employees in the Commonwealth of Virginia. Sterling Management is a  "person" using "consumer reports" for "employment purposes" and takes "adverse action" against "consumers," as those terms are defined by 15 U.S.C. § 1681a.

5.     Sterling Holdings, LLC ("Sterling Holdings") is a Virginia limited liability company which hires employees in the Commonwealth of Virginia. Sterling Holdings is a "person" using "consumer reports" for "employment purposes" and takes "adverse action" against "consumers," as those terms are defined by 15 U.S.C. § 1681a.

6.     Joshua Bilder ("Mr. Bilder") is the Chairman of Sterling Management and is a "person" using "consumer reports" for "employment purposes" and takes "adverse action" against "consumers," as those terms are defined by 15 U.S.C. § 1681a.[1]

## IV.     Facts

### *Applicable to All Counts*

7.     The Sterling Entities rent out apartments, homes, or office spaces throughout the City of Richmond, Virginia and surrounding counties.

8.     Upon information and belief, the Sterling Entities use resident-screening services provided by CoreLogic SafeRent, LLC ("SafeRent") to assess lease applications and provide "lease recommendations."

9.     Mr. Bilder is Chairman of Sterling Management and, on information and belief, a manager of Sterling Holdings, and uses SafeRent to evaluate leasing applications to and hiring employees for the Sterling Entities.

---

[1] Sterling Management and Sterling Holdings are referred to collectively as the "Sterling Entities." The Sterling Entities and Mr. Bilder are referred to collectively as "Defendants."

10.     On or about November 5, 2018, Mr. Clarke met with Mr. Bilder to discuss employment with the Sterling Entities. Mr. Clarke, accompanied by his friend and current Sterling Entities employee Javier Echavarria, met and interviewed with Mr. Bilder about potential employment at the Sterling Entities to perform repair, painting, plumbing, and general construction work on the Sterling Entities' various rental properties .

11.     During the interview, Mr. Bilder asked Mr. Clarke if he had a felony conviction. Mr. Clarke admitted that yes, he was a convicted felon. Mr. Bilder assured him "it's no big deal" and agreed to hire Mr. Clarke.

12.     Mr. Bilder asked Mr. Clarke for his Social Security number and address to confirm Mr. Clarke was a citizen and to provide Mr. Clarke with tax forms related to his compensation for services provided to the Sterling Entities.

13.     Neither the Sterling Entities nor Mr. Bilder had Mr. Clarke fill out any type of job application or paperwork.

14.     Neither the Sterling Entities nor Mr. Bilder provided a clear and conspicuous written disclosure to Mr. Clarke explaining that a consumer report may be obtained on him for employment purposes.

15.     Neither the Sterling Entities nor Mr. Bilder received written authorization from Mr. Clarke to perform a lease recommendation report, criminal background report, credit report, or any other type of consumer report on him for employment purposes.

16.     Mr. Clarke began working for the Sterling Entities on the following day, i.e. November 6, 2018.

17.     For the next several weeks, Mr. Clarke performed his job duties satisfactorily, received his agreed upon compensation, and had no altercations at work.

18.     However, on November 26, 2018, one of Mr. Clarke's co-workers informed him that Mr. Bilder wanted to terminate his employment because of his criminal background. Mr. Clarke met with Mr. Bilder to discuss his criminal background. Mr. Bilder provided Mr. Clarke a Lease Recommendation report ("Lease Recommendation") that included a criminal history report.

19.     The Lease Recommendation was requested on November 14, 2018 by Mr. Bilder through the Sterling Entities' SafeRent service.

20.     The Lease Recommendation included an Experian Information Solutions, Inc. ("Experian") consumer report.

21.     The Lease Recommendation was requested by Mr. Bilder for the sole purpose of obtaining a background report on Mr. Clarke.

22.     The Lease Recommendation listed no pertinent lease information—no monthly rent, total income, security deposit amount, nor lease term were provided when the Lease Recommendation was requested from SafeRent.

23.     The non-existent screening details in the Lease Recommendation is clear proof that the intent of the Lease Recommendation was not for leasing purposes at all.

24.     In agreeing to SafeRent's standard mandatory contract with companies/customers such as the Sterling Entities, Mr. Bilder would have represented to SafeRent that the only purpose for which he obtains and used Lease Recommendation reports would be for prospective rental purposes. On information and belief, in each instance that Mr. Bilder or the Sterling Entities requested a Lease Recommendation report, SafeRent required a certification that the Lease Recommendation report was being requested to evaluate a prospective tenant's leasing application.

25.     On November 26, 2018, Mr. Bilder informed Mr. Clarke that he was fired because of information contained in the Lease Recommendation.

26.     Mr. Clarke was surprised that a criminal background report was created because he gave no authorization for such a report. Mr. Clarke explained that the unauthorized report was most likely illegal, but Mr. Bilder assured him it was permissible to run a criminal background check on Mr. Clarke without his prior authorization.

27.     Mr. Clarke was visibly upset and embarrassed about the employment termination by Defendants.

28.     Mr. Clarke's last day of employment for Sterling Management was November 26, 2018.

29.     On November 28, 2018, Mr. Bilder gave Mr. Clarke a second copy of his criminal background report.

30.     Among other things, the FCRA regulates the collection, maintenance, and disclosure of consumer credit report information by consumer reporting agencies ("CRAs"), including public record information. Additionally, the FCRA mandates conditions, procedures, and limitations on the use of consumer reports for employment purposes by prospective employers and other individuals.

31.     When using criminal background checks for employment purposes, employers must, before declining, withdrawing, or terminating employment based in whole or in part on the contents of the report, provide job applicants like Mr. Clarke with a copy of their respective background reports as well as a written summary of their rights under the FCRA.

32.     During the hiring process, Mr. Bilder and the Sterling Entities did not present Mr. Clarke with any document purporting to authorize Defendants (or any of them) to obtain a consumer background report about him for employment purposes.

33.     Instead, Mr. Bilder used the Sterling Entities' tenant-screening software SafeRent to perform a multi-state criminal background report and credit report through a sham Lease Recommendation on Mr. Clarke.

34.     Mr. Clarke did not provide authorization to Defendants to access his criminal background report, credit report nor any type of consumer report covered by the FCRA.

35.     Defendants obtained Mr. Clarke's report without having statutory permission to do so. This invaded the privacy of Mr. Clarke as Defendants' conduct violated one of the core protections the FCRA imposes—that consumer reports be provided for the purposes permitted by the statute, "and no other." 15 U.S.C. § 1681b(a).

36.     In obtaining consumer reports for any purpose, Defendants must certify to the provider of the report the purpose for which the report will be used. 15 U.S.C. § 1681f(2). Users likewise "certify that the information will be used for no other purpose." 15 U.S.C. § 1681e(a). Upon information and belief, Defendants certified to SafeRent that they were obtaining the Lease Recommendation for leasing purposes, and that was the only purpose for which the report would be used.

37.     Defendants' certification to SafeRent was false. The Leasing Recommendation was not used for leasing purposes but rather for employment purposes.

38.     Defendants therefore misrepresented their permissible purpose to SafeRent and broke the law by using Mr. Clarke's report anyway to terminate his employment and invade his privacy in illegally obtaining the Leasing Report.

39.     Defendants actions resulted in an inquiry on Mr. Clarke's Experian credit report which falsely represented that he was seeking to enter into a lease transaction with Sterling Management.

## Count One – Violations of the Federal Fair Credit Reporting Act
## (15 U.S.C. § 1681b(b)(2))

40.     Mr. Clarke re-avers and incorporates all other factual allegations set forth in this Complaint.

41.     Defendants willfully violated the FCRA, 15 U.S.C. § 1681b(b)(2)(A)(i), because they failed to provide a clear and conspicuous written disclosure in a document that consists solely of the disclosure to applicants and employees that a consumer report may be obtained for employment purposes.

42.     Defendants willfully violated the FCRA, 15 U.S.C. § 1681b(b)(2)(A)(ii), because they failed to obtain written authorization from Mr. Clarke to procure a consumer report for employment purposes.

43.     As a proximate result of Defendants' violations of 15 U.S.C. § 1681i(b)(2)(A)(ii), Mr. Clarke suffered actual damages, including but not limited to: lost wages, embarrassment, humiliation, damage to reputation, negative impact on his credit rating(s), severe stress, and out-of-pocket costs.

44.     Mr. Clarke is entitled to recover actual damages, statutory damages, punitive damages, costs, and attorney's fees from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## Count Two – Violations of the Federal Fair Credit Reporting Act
## (15 U.S.C. § 1681b(b)(3)(A))

45.     Mr. Clarke re-avers and incorporates all other factual allegations set forth in this Complaint.

46.     The FCRA provides that any person "using a consumer report for employment purposes" who intends to take any "adverse action based in whole or in part on the report," must

7

provide the consumer to whom the report relates a copy of the consumer report and a written description of the rights of a consumer under the FCRA before taking such adverse action. 15 U.S.C. § 1681b(b)(3)(A).

47. Under the FCRA, a "person" includes a corporation under 15 U.S.C § 1681a(a).

48. An "adverse action" under 15 U.S.C. § 1681b(b)(3)(A) includes "any ... decision for employment purposes ... that adversely affects any ... prospective employees." 15 U.S.C. § 1681a(k)(1)(B)(ii). Alternatively, an adverse action is an action taken or a determination that is made in connection with an employment application made by a consumer and adverse to the intrerest of the consumer within the meaning of 15 U.S.C. § 1681(k)(B)(iv).

49. Defendants willfully violated 15 U.S.C. § 1681b(b)(3)(A)(i) by failing to provide a copy of the consumer report used to make an adverse action decision for an employment purpose to Mr. Clarke before taking adverse action that was based in whole or in part on that report.

50. Defendants willfully violated 15 U.S.C. § 1681b(b)(3)(A)(ii) by failing to provide a copy of the Summary of Rights requried under the FCRA to Mr. Clarke before taking adverse action that was based in whole or in part on a consumer report.

51. Defendants used SafeRent tenant-screening software to make determinations or judgments about hiring and/or retaining Mr. Clarke.

52. Defendants contracted with SafeRent to perform background checks of prospective renters for purposes of lease recommendation. However, Mr. Clarke was not applying for a lease through the Sterling Entities but rather employment. Defendants used their tenant-screening software not as intended for evaluating a potential renter, but rather used to run a background report on Mr. Clarke.

53. In essence, when SafeRent returned its "Lease Recommendation," no score

8

recommendation or lease agent decision was provided because that criteria was not entered in by Defendants because this report was solely used to surreptitiously obtain a background report on Mr. Clarke.

54.     Defendants took "adverse action" against Mr. Clarke as soon as he received the SafeRent report for Mr. Clarke that listed his criminal record.

55.     The fact that Mr. Clarke and Mr. Bilder met in person on multiple occasions does not negate the fact that Defendants, upon receipt of the Lease Recommendation, immediately determined that Mr. Clarke would be discharged based on the Lease Recommendation.

56.     As a proximate result of Defendant's violations of 15 U.S.C. § 1681i(b)(3)(A), Mr. Clarke suffered actual damages, including but not limited to: lost wages, embarrassment, humiliation, damage to reputation, negative impact on his credit rating(s), severe stress, and out-of-pocket costs.

57.     The violations by Defendants were willful, rendering them liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Defendants were negligent, which entitles Mr. Clarke to recover under 15 U.S.C. § 1681o.

58.     Mr. Clarke is entitled to recover actual damages, statutory damages, punitive damages, costs, and attorney's fees from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

### Count Three – Violation of the Federal Fair Credit Reporting Act
### (15 U.S.C. § 1681q)

59.     Mr. Clarke re-avers and incorporates all other factual allegations set forth in this Complaint.

60.     Defendants violated the FCRA, 15 U.S.C. § 1681q, which imposes criminal

liability on "any person who knowingly and willfully obtains information on a consumer from a consumer reporting agency under false pretenses." *Id.*

61.     Defendants were fully aware that Mr. Clarke did not authorize a background report. Surreptitiously, Defendants submitted a bogus tenant-screening report request as to Mr. Clarke in order to obtain his background report. Defendants did not have a permissible purpose to access or request Mr. Clarke's criminal history from SafeRent. Because Defendants lacked any basis to access or request Mr. Clarke's criminal background report by way of a tenant-screening application, Defendants obtained Mr. Clarke's information under false pretenses.

62.     Defendants knowingly and willfully obtained Mr. Clarke's criminal background report information under false pretenses because it sent a lease recommendation request to SafeRent despite Mr Clarke not applying for a lease with the Sterling Entities and never authorizing Defendants to obtain a criminal background report.

63.     Defendant's conduct, actions, and inaction were willful, rendering them liable for punitive damages in an amount to be determined by the court pursuant to 15 U.S.C. § 1681n.

64.     Mr. Clarke is entitled to recover actual damages, statutory damages, punitive damages, costs, and attorney's fees from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

### Count Four – Violation of the Federal Fair Credit Reporting Act
### (15 U.S.C. § 1681b(f))

65.     Mr. Clarke re-avers and incorporates all other factual allegations set forth in this Complaint.

66.     Defendants violated the FCRA, 15 U.S.C. § 1681b(f), by obtaining Mr. Clarke's consumer report without a lawful, permissible purpose as established by 15 U.S.C. § 1681b(a).

67.     Defendants' conduct, actions, and inaction were willful, rendering them liable for

punitive damages in an amount to be determined by the court pursuant to 15 U.S.C. § 1681n.

68.     Mr. Clarke is entitled to recover actual damages, statutory damages, punitive damages, costs, and attorney's fees from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

## V.     Demand for Trial by Jury

69.     Mr. Clarke demands trial by jury in this case.

## VI.     Conclusion

WHEREFORE, Mr. Clarke prays that the Court enter a judgment for actual, statutory and punitive damages against the Defendants, jointly and severally; for his attorney's fees and costs; for prejudgment and post-judgment interest at the judgment rate; and such other relief the Court deems just and proper.

Respectfully submitted,

**DERRICK CLARKE**

By____/s/ Drew D. Sarrett_____
                Counsel

Drew D. Sarrett (VSB No. 81658)
The Sarrett Law Firm, PLLC
8100 Three Chopt Road, Suite 203
Richmond, Virginia 23229
Phone: (804) 303-1951
Fax: (804) 250-6005
E-mail: drew@sarrettlawfirm.com
*Counsel for Plaintiff(s)*